UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-1656(JMR/FLN)

Ellen Abram )
)
v. ) ORDER
)
Cargill, Inc., et al. )

Ellen Abram, a former Cargill, Inc., employee, seeks long-term disability benefits she claims were wrongfully denied under Cargill's Long Term Disability Plan ("LTD Plan or the Plan"). Cargill delegates all administrative claim processing for the Plan to co-defendant UNICARE as the LTD Plan Administrator. Defendants claim the denial of benefits was proper, and ask the Court to uphold that decision. Each side seeks summary judgment.

I. Background

A. Plaintiff's Employment History

Plaintiff began her employment with Cargill in 1973 as a professional accounting manager, supervising numerous employees engaged in billing and other financial matters. Beyond her managerial duties, she organized several volunteer-based events, including Special Olympics, family outings, and silent auctions.

As part of her employment benefits, plaintiff obtained disability insurance, and in 1977, she qualified for and obtained supplemental long-term disability insurance.

In 1998, on the recommendation of Dr. Anne Brutlag, her primary physician, plaintiff began working a 3 day, 20 hour, week.

FILED SEP 29 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

75

Cargill accommodated this reduced schedule by scaling back plaintiff's duties and limiting her tasks to those which could be performed while seated. Plaintiff used her short-term disability and accrued vacation time to supplement her income, thereby maintaining the 40 hour week pay level. Even with this significantly reduced work schedule, plaintiff felt her symptoms were worsening. In October, 2000, she stopped working altogether and sought long-term disability benefits.

B. Plaintiff's Medical History

At 18 months of age, plaintiff contracted polio. She was hospitalized for several months with infantile paralysis. Her illness caused her right leg to develop more slowly than her left, but with rehabilitation and treatment, she ultimately functioned as a typical teenager and young adult.

In 1985, as an adult, plaintiff again began to suffer polio-related symptoms. These symptoms first manifested during her second pregnancy and delivery. Dr. Brutlag diagnosed the symptoms as post-polio syndrome ("PPS") in 1986. PPS is a disease affecting individuals who had polio early in life. The more extreme a patient's original polio case, the more likely one will suffer severe PPS. Symptoms include fatigue, pain, and muscle weakness.

In November, 1999, plaintiff slipped on a wet floor at work and fractured her ankle. She was treated by physicians other than Dr. Brutlag.

Shortly thereafter, in March, 2000, she returned to Dr. Brutlag complaining of worsening PPS symptoms. Dr. Brutlag noted Abram's increased weakness and numbness in her right leg and a persistent Trendelenburg gait.[1] Dr. Brutlag described myofascial changes in plaintiff's right leg and documented plaintiff's reports of increased fatigue-related stumbling and exhaustion. Dr. Brutlag prescribed a weight loss and exercise program, and suggested that a long-term disability leave would facilitate Abram's ability to regularly exercise and lose weight.

In follow-up visits, Abram was diagnosed as morbidly obese. Dr. Brutlag and other physicians documented plaintiff's complaints about symptom progression. To treat the increased pain, Dr. Brutlag administered trigger-point injections in Abram's lower extremities. Dr. Brutlag evaluated plaintiff's condition and her PPS symptoms during follow-up medical visits on March 3, August 15, and September 26, 2000.[2]

According to plaintiff, PPS limits her ability to write clearly, walk across Cargill's campus, and maintain concentration. In her personal life, she states she is unable to engage in much

---

[1]A Trendelenburg gait is an imbalanced or limped walk. It is "the walk of a person whose gluteus medius muscle is paralyzed, characterized by an unbalanced gait throwing weight directly over one femur. The medical significance of a Trendelenburg [gait] is that it makes abduction of the thigh more difficult." Williams v. Bowen, 859 F.2d 255, 257 (2d Cir. 1988).

[2]On August 31, 2000, Abram was seen by Dr. Rosemarie C. Stiepani.

social activity or participate in sports or heavy housework. She claims she is limited to light house work and has ended her volunteer commitments.

C. Plaintiff's Long-Term Disability Benefits Application

Ms. Abram originally applied for long-term disability benefits on July 26, 2000, claiming total disability caused by PPS and depression. Cargill's LTD Plan describes total disability as "the complete inability of a Participant to perform any and every duty of his regular occupation with the Company." Stipulated Ex. 1 at ¶ 2.20. The LTD Plan allows a claimant to introduce any and all evidence demonstrating total disability "as the Plan Administrator may require." Stipulated Ex. 1 at ¶ 9.3.

UNICARE first considered Abram's medical records by submitting them to an in-house nurse for review. The nurse's review focused only on certain portions of plaintiff's records, and incorrectly considered Ms. Abram's job as a part-time 20 hour position. The nurse emphasized the November 8, 1999, doctor visit for a fractured ankle, and the March, 2000, visit with Dr. Brutlag. The nurse's review did not discuss any subsequent assessments. Based on this review, the nurse concluded there was insufficient medical evidence to support a claim of permanent total disability. This did not, however, conclude UNICARE's review.

UNICARE also retained Dr. Joel Gedan, a Board Certified Neurologist, Certified Independent Medical Examiner, and Fellow of

the American Academy of Disability Evaluating Physicians, to conduct an independent medical examination ("IME"). Before conducting the IME, Dr. Gedan reviewed all of the physician's notes submitted Ms. Abram, the in-house nurse's evaluation, and the medical reports from 1986 when plaintiff's was diagnosed PPS.

Dr. Gedan personally performed the IME on January 17, 2001. As part of the examination, he interviewed Ms. Abram about her condition and reported her complaints of generalized pain, particularly in her right lower extremity. He conducted static strength testing and found good strength effort in the lower extremities and arms. He found a waddling gait, instability in her pelvis and hips, a lack of knee and ankle jerks, and that she had difficulty in getting up on her heels and toes. Dr. Gedan noted plaintiff's description of prior depression, and that she cried throughout the exam. Finally, he described her as overweight and deconditioned.

In reaching his conclusions, Dr. Gedan found Abram's weight "would contribute to lack of stamina, fatigue and impairment." Stipulated Ex. 11 at 5. He felt treatment of her "severe," "profound," depression would alleviate her difficulties, because depression often interferes with the ability to successfully evaluate fatigue. Id. He also recommended a functional capacity exam ("FCE") to better assess plaintiff's complaints of fatigue, because they are "extremely difficult to quantify and measure and,

to a large extent, are subjective and totally reported by the patient." Although he did not dispute Dr. Brutlag's finding that plaintiff suffers from PPS, he did not believe this condition resulted in an inability to perform seated or light-duty work.

UNICARE forwarded this report to Dr. Brutlag for her comments. Dr. Brutlag disagreed with several of Dr. Gedan's observations and conclusions. First, she disagreed with his finding of profound depression, stating that after years of treatment, she has identified only reactive depression. She noted that Ms. Abram was to attend the funeral of a friend after the IME, and that Abram was quite upset by the death. Dr. Brutlag disputed Dr. Gedan's assessment regarding plaintiff's lower extremity weakness, particularly on the right side. She described a progressive worsening of the weakness over the course of their doctor/patient relationship. While agreeing Abram would benefit from weight loss, Brutlag stated PPS was an independent cause of pain, weakness, and fatigue. Finally, she concurred with the need for an FCE to assess Abram's fatigue, the dominant symptom of PPS. Dr. Brutlag concluded that Ms. Abram was highly motivated to work and emotionally invested in her job, but unable to perform her job duties.

On March 7, 2001, a UNICARE claims administrator further reviewed administrative file and determined the record lacked any medical evidence demonstrating plaintiff was unable to perform her

job. On March 12, 2001, UNICARE denied plaintiff's claim, and in its letter cited an absence of objective medical evidence documenting her disability, her prior ability to perform the job requirements with her physical impairment, and the belief that lower extremity weakness would not interfere with her sedentary job. The letter further informed plaintiff of her right to appeal and to provide any additional pertinent information.

Abram appealed the denial on May 9, 2001. By its terms, the Plan provides for independent review of an appealed claim by an eight member committee. To support her disability claim, plaintiff submitted additional medical documentation.

First, she retained a physical therapist, Dr. John Hovde, to perform an FCE. He performed a 5 day, 32 hour evaluation to determine Abram's ability to do sedentary work. His report includes a neuromusculoskeletal evaluation documenting a limp with a side lurch, inability to perform a deep knee bend, and right leg weakness. He also reported that plaintiff was able to get onto and off of the examination table independently. He noted normal mobility in her upper extremities.

The bulk of the FCE evaluated fatigue and physical changes resulting from the work simulation. According to Dr. Hovde, "All measures of strength declined at the end of the evaluation compared to baseline. Most obvious was the decrease in her lifting ability, which decreased to a maximum of 20 lbs. with obvious mechanical

signs of effort and difficulty." Stipulated Ex. 20 at 3. In addition, her gait slowed, her limp increased, grip testing decreased, there was a decrease in force production from the lower extremities, and "[a]t the end of the evaluation, she also relied much more on her arms to rise and lower from a seated position." Id. Dr. Hovde observed additional physical changes in Ms. Abram during the simulation. She began the work week seated upright and physically mobile in her work space. Later in the week, this mobility decreased. "She was frequently observed hunched over and leaning on the work surface or leaning to one side on an elbow." Id. In general, she moved more slowly.

Finally, Dr. Hovde reported plaintiff's subjective complaints. While she described some increased pain, she was more concerned with fatigue. As the week progressed, she said she was "wiped out" and "exhausted." Id. Early in the week, she rated her fatigue as 1-2 on a 1-10 scale; on Thursday and Friday, she reported it as 7-9. She also reported mistakes and difficulty concentrating.

Dr. Hovde found plaintiff could perform 30 hours of work per week, but reported observable functional changes over that period of time. As a result, he could not quantify how many hours she could successfully perform sedentary work in a week. He believed it to be more than 4 hours a day, and more than 20 hours in a given week, but not on a consistent week-to-week basis. He concluded she could successfully work 20 hours per week.

After reading this report, the UNICARE committee was concerned with discrepancies regarding plaintiff's ability to work 40 hours a week - as opposed to 20 hours a week. As a result, the committee asked Dr. Brutlag to complete an FCE as well. See Stipulated Ex. 28 at UNI 00725.

On June 27, 2001, Dr. Brutlag completed an FCE based on a June 26, 2001, examination of Abram. In her report, Dr. Brutlag stated Ms. Abram could sit at work for only 1 to 2 hours daily, and could not stand, walk, or engage in any alternative activity because of weakness and fatigue. She estimated Abram could rarely lift, carry, push, or pull 10 lbs. in an 8 hour day. Dr. Brutlag concluded this report by finding Ms. Abram totally disabled from productive employment.

On July 8, 2001, the LTD Plan's regular 60 day appeal period ended without decision. See Stipulated Ex. 1 at ¶ 9.1(5) (providing for a decision within 60 days, "unless special circumstances require an extension of time for reviewing said denied claim."). On July 11, 2001, UNICARE contacted plaintiff's counsel and informed her the decision would be delayed to facilitate a full review of Dr. Brutlag's FCE and to correct any remaining misunderstandings about the precise demands of Abram's job. After meeting on July 23, 2001, to resolve the claim, UNICARE determined it should contact Dr. Gedan for reconsideration of his original assessment in light of the two subsequent FCEs.

On July 30, 2001, Dr. Gedan submitted a supplemental report concluding, as he had in his original report, that Abram was "not totally disabled from performing the duties of her job in a 40-hour work week." Stipulated Ex. 26 at 3. Dr. Gedan explained that an FCE does not necessarily show the upper limits of one's ability to work. When the testing showed plaintiff was able to perform 6 to 7.5 hours of work in a day, Dr. Gedan saw "no reasonable medical explanation as to why" she could not work an 8 hour day. Id. at 4. He could not disqualify her from performing sedentary to light duty work, and felt that, with sufficient daily breaks, plaintiff could perform her job.

After receiving Dr. Gedan's report and considering the record as a whole, the LTD Plan's independent review committee denied Ms. Abram's appeal on August 7, 2001. Plaintiff filed this suit on August 9, 2001, in the Hennepin County District Court for the Fourth Judicial District. Defendants properly removed the case to this Court on September 7, 2001.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party opposing summary judgment may not rest

upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

B. Standard of Review

As a threshold matter in an Employee Retirement Income Security Act ("ERISA") case, the Court must determine the applicable standard of review. The parties here have proposed three possible standards of review: abuse of discretion, de novo review, or a sliding scale less deferential standard.

Under ERISA, the standard of review used to analyze an administrator's decision depends on the benefit plan's language. The presumptive standard of review is de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115

(1989). If the plan vests its administrator with discretion, however, the court's review is limited to determining whether the administrator abused that discretion. Id.[3] Should this Court decline de novo review, plaintiff urges the Court to adopt a sliding scale standard based on the appellate court's decision in Woo v. Deluxe Check Corp., 144 F.3d 1157, 1160-61 (8th Cir. 1998). Thus, the first question for the Court to determine is whether the LTD Plan vests the administrator with discretion.

1. Which Standard is Applicable Here?

Cargill's long-term disability policy includes two descriptions of the authority to consider eligibility for benefits. These descriptions are included in the LTD Plan and the Summary Plan Description ("SPD"). The LTD Plan states:

> The Plan Administrator shall administer the Plan in accordance with its terms and shall have all the powers necessary to carry out its provisions. It shall in its sole discretion determine all questions arising in the administration, interpretation and operation of the Plan, and in so doing may consult with, and rely upon, such legal actuarial or medical opinions as it deems necessary and proper. Any such determination shall be conclusive and binding on all Participants and their beneficiaries . . . .

Stipulated Ex. 1 at ¶ 8.1. The parties agree this language is sufficient to trigger the arbitrary and capricious standard of review. Pl. Opp'n. Mem. at 5; Defs. Summ. J. Mem. at 10.

---

[3] The Eighth Circuit Court of Appeals has found that abuse of discretion and arbitrary and capricious standards interchange in ERISA cases. Sahulka v. Lucent Tech., 206 F.3d 763, 766 (8th Cir. 2000).

Defendants also provide participants with an SPD, which includes a different description of the administrative procedures for benefits claims and appeals. This document states:

> A plan representative makes determinations regarding the eligibility for LTD benefits under the plan. . . . If a claim is denied . . . . the claims administrator has the exclusive right to interpret the provisions of the policy so its decision is conclusive and binding.

Stipulated Ex. 2 at 10-11. The Court must determine whether this language grants discretionary authority.

Plaintiff argues the SPD limits administrative discretion to the appeal and not to benefits eligibility, relying heavily on the Eighth Circuit's decision in Baxter v. Lynn, 886 F.2d 182 (8th Cir. 1989). There, the court considered the standard of review for a plan administrator's interpretation of an ambiguous subrogation clause. Id. at 187. The contested provision required plan trustees to determine benefits eligibility. Id. at 188. Because the plan did not vest discretion to interpret unclear terms, the court found de novo review appropriate. Id.

Here, plaintiff asks the Court to find that any differences between the Baxter provision and the one at issue are immaterial. She suggests the Court should apply the *expressio unius est exclusio alterius*[4] maxim, claiming it places the LTD Plan and the

---

[4]The expression of one thing implies the exclusion of all other things.

SPD in conflict.[5] The Court declines to do so, finding this contract construction maxim inapplicable here. Where an SPD is silent, and an LTD plan specific, the plan's detailed provisions control. See Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1198 (8th Cir. 2002). In other words, silence does not equal exclusion.

Baxter does not control this case. To the contrary, the Court finds Jordan v. Retirement Committee of Rensselaer Polytechnic Institute, 46 F.3d 1264 (2d Cir. 1995), persuasive. In Jordan, the Second Circuit Court of Appeals considered language providing that the benefits administrator "shall pass upon all questions concerning the application or interpretation of the provisions of the Plan." Id. at 1267. The Second Circuit rejected Baxter because it discerned a pivotal distinction in the plan language – the discretionary power to interpret. See id. at 1271; see also Shell v. Amalgamated Cotton Garment, 43 F.3d 364, 366 (8th Cir. 1994) (holding that where a plan administrator has "power to interpret," abuse of discretion analysis applies). The Second

[5]None of plaintiff's cited "conflict" cases involve claim review procedures vis-a-vis the Plan administrator's discretionary authority. Instead, they each involve substantive conflicts over plan terms. See Marolt v. Alliant Techsystems, Inc., 146 F.3d 617 (8th Cir. 1998) (reviewing substantive differences on bridging of retirement benefits in the SPD and LTD Plan); Barker v. Ceridian Corp., 122 F.3d 628 (8th Cir. 1997) (reviewing conflict between vesting clause granting benefits and a reservation of rights clause allowing administrator to change conditions of vesting); Jenson v. SIPCO, Inc., 38 F.3d 945 (8th Cir. 1994) (reviewing conflict between reservation of rights provisions and clauses on termination of benefits).

Circuit found the power to interpret confers upon the Plan administrator the full arsenal of discretionary decisionmaking authority necessary to process claims. As a result, the Court found the arbitrary and capricious standard applicable. See Jordan, 46 F.3d at 1271; Pompe v. Cont'l Cas. Co., 119 F. Supp. 2d 1004, 1008 (W.D. MO. 2000) (rejecting the argument that discretion over interpretation did not include discretion over eligibility).

The Second Circuit's reasoning is consistent with the Supreme Court's Firestone decision, where the Court recognized the "power to construe disputed or doubtful terms" as the basis of discretionary authority. See 489 U.S. at 111; see also id. at 113 (any discretionary authority vests the powers of a fiduciary). It is also consistent with appellate decisions considering language analogous to that before the Court. See Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1138-41 (11th Cir. 2001) (finding plan language giving administrator an "exclusive right to interpret the provisions of the Plan, so its decision is conclusive and binding" is discretionary); Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1284-85 (9th Cir. 1990) (right to interpret terms qualified plan for discretionary review); Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989) (finding "Blue Cross and Blue Shield of Alabama has the exclusive right to interpret the provisions of th[is] Plan, so its decision is conclusive and binding" triggers arbitrary and

capricious standard of review).

In this case, while the language is not exactly congruent, both the LTD Plan and the SPD grant the administrator the required discretionary authority. As a result, minor variations are irrelevant.[6] See Parker v. Nyhart Co., Inc., 2000 WL 33281118, *7-8 (S.D. Ind. Oct. 25, 2000); see also Jackson v. Wal-Mart Stores, Inc., 92 F. Supp. 2d 882, 885-886 (W.D. Ark. 2000). As each Plan document includes language sufficient to convey discretion, the Court reviews the administrator's decision using the abuse of discretion standard.[7]

Finally, the Court recognizes -- but rejects -- plaintiff's claim that she personally looked at the SPD's language and felt it conferred only limited power on the administrator. Her own view is not determinative; the Court finds the SPD language, like the LTD

---

[6]Plaintiff further argues the Court should consider language from other Cargill benefits policies, including its general health care plan. Again, the Court declines to do so. Each ERISA plan must be considered on its own terms. The Court will not use a mix-and-match standard to determine the administrator's discretion. There is no set of magic words which trigger discretionary review. See Armstrong v. Great Lakes Higher Educ. Corp., 2002 U.S. Dist. LEXIS 4751, *7 n.2 (D. Minn. March 18, 2002) (citing Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000)). Whether Cargill "knew," as plaintiff asserts, that certain language resulted in discretionary review does not prevent it from attaining discretionary review through an alternative framing of its policies.

[7]Because the Court finds that both Cargill documents include a grant of discretionary authority, the parties' arguments over which document controls in the event of a conflict are moot. The effect of the disclaimer in the SPD, and whether the law requires that it contain discretionary language are moot as well.

language, enables a discretionary review. While Ms. Abram "did not see any discretionary language in the SPD," see Pl. Opp'n. Mem. at 11, the Court cannot find that an interested party's misreading or misunderstanding estops Cargill, or this Court, from enforcing the terms of a written ERISA Plan.

2. Woo v. Deluxe Check Corp.

Having determined the Plan language requires the Court to review the Plan administrator's decision under an abuse of discretion analysis, the Court must also consider plaintiff's invocation of the sliding scale analysis used in Woo. See 144 F.3d at 1160-61. The Woo sliding scale analytic is appropriate when a beneficiary presents "material probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty[.]" Id. at 1161 (citing Buttram v. Cent'l States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996)). To satisfy the second prong, plaintiff must demonstrate that conflict or procedural irregularity has "some connection to the substantive decision reached." Buttram, 76 F.3d at 901. If the Woo standard applies, the degree of deference slides in proportion to the extent of conflict. See Tillery, 280 F.3d at 1197.

Plaintiff claims the administrator's delay in ruling on her appeal constitutes a breach of fiduciary duty. Defendants do not deny sending letters to Ms. Abram promising a decision within 60 days. It is also true that both Cargill's LTD Plan and federal law require a decision within 60 days, absent special circumstances. The Court must, therefore, decide whether defendants' delay is a "serious breach of fiduciary duty." See Phillips-Foster v. UNUM Life Ins. Co. of Am., 302 F.3d 785, 795 (8th Cir. 2002) (citations omitted).

> It is not enough simply to show the plan administrator did not act in the sole interest of the claimant. The plan administrator's fiduciary duties extend to everyone covered by the plan, and an administrator who fails properly to investigate a claim breaches its fiduciary duty to all beneficiaries by granting benefits to unqualified claimants.

Tillery, 280 F.3d at 1197.

The Eighth Circuit recognizes that a failure to timely notify a Plan participant of a claim denial is a serious procedural irregularity. See id. at 1198-99 (claim was resolved in timely manner, but notice of decision was never sent); McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1031 (8th Cir. 2000) (wherein defendants failed to process appeal and no notice was sent).[8] In other circumstances, however, the Court found delays of

[8]Plaintiff cites Jebian v. Hewlett-Packard Co., 310 F.3d 1173, 1177-79 (9th Cir. 2002), arguing defendants' conduct invokes de novo review. In Woo, the Eighth Circuit specifically rejected this approach, instead adopting the sliding scale. See 144 F.3d at 1162.

a final decision "insufficient by themselves to require a higher standard of review." See Phillips-Foster, 302 F.3d at 796; Goldammer v. Aid Assoc. for Lutherans, 747 F. Supp. 1366, 1369 (D.S.D. 1990). Where the administrator required additional time to resolve open questions regarding benefits eligibility, a delay was not a serious irregularity. Id.; Winters v. UNUM Life Ins. Co. of Am., 232 F. Supp. 2d 918, 930 (W.D. Wis. 2002) (substantial compliance is sufficient where both sides were given notice of the delay).

The Court cannot find defendants breached their duty. Defendants delayed their decision because they were actively seeking to resolve this claim and adequately address any misunderstandings concerning Ms. Abram's job requirements. See Stipulated Ex. 28 at UNI 00725; Stipulated Ex. 29 at UNI 00732-00733. Plaintiff's suggestion that Dr. Gedan reconsider his findings is somehow illicit lacks merit. It seems just as likely that UNICARE was hoping -- as expressed in internal documents, see id. -- to reach unanimity on her disability. At worst, the administrator was working to confirm a disability, as a fiduciary must. See Tillery, 280 F.3d at 1197. The thorough review cannot be considered a breach of duty.

Next, plaintiff cites defendants' failure to notify her of its planned delay in writing. Defendants argue any difference between written and oral notification does not rise to the level of serious

procedural irregularity. The Court agrees with defendants. Plaintiff knew defendants planned to use the 60 day extension to seek IME feedback and correct prior UNICARE error. The oral notice, at worst, results in only minimally reduced deference.

Even if written notice and the delay are a breach of fiduciary duty, there is no showing it affected Ms. Abram's claim. Such a connection must be supported by material, probative evidence. See Woo, 144 F.3d at 1160. "In order to prevail, the claimant must offer evidence which causes 'serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" Phillips-Foster, 302 F.3d at 795 (citing Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 589 (8th Cir. 1999)). The mere fact that the claim was denied is not probative evidence. Barnhart, 179 F.3d at 589.

In Tillery v. Hoffman Enclosures, Inc., a plan administrator did not notify a claimant of its decision until some time after the decision was made. The Eighth Circuit held that this irregularity was not "so egregious that the court has a total lack of faith in the integrity of the decision making process." 280 F.3d at 1199, citing McGarrah, 234 F.3d at 1031 (finding failure to respond to appeal does not undermine confidence). The Eighth Circuit recognized the insurer had made a detailed, independent review and investigation of the claim. See Tillery at 1199. Given that the review involved an extensive inquiry, the delay did not undermine

the court's confidence in the fiduciary's exercise of its responsibilities.

Plaintiff does claim she was restricted in her ability to supplement the record following the denial of her claim. This is her only allegation connecting defendants' conduct with its decision. Plaintiff insists immediate action was necessary because of the statute of limitations for this lawsuit. As the Court has explained in its previous opinion in this case, the statute of limitations issue is a red herring. See Abram v. Cargill, 2003 U.S. Dist. LEXIS 7027 (D. Minn. Feb. 10, 2003). Even if the filing date was approaching, Ms. Abram can cite no Eighth Circuit case law showing a fiduciary is obligated to continually allow expansion of the record or that it must participate in a ping-pong series of responses, one side to the other.

She offers Vega v. National Life Insurance Services, Inc., 188 F.3d 287, 300 (5th Cir. 1999) as support for such a rule. That case states only that if a claimant's attorney timely submits information to the plan administrator, even post-appeal, that information shall be considered part of the administrative record. Id. The decision does not, however, require the opportunity to enhance the record. Our court has declared that a trial court reviewing a denial of benefits "must focus on the evidence available to the plan administrators at the time of their decision[.]" See Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th

Cir. 1999). The fact that plaintiff could not endlessly offer additional material in support of her claimed disability does not connect defendants' procedural errors to the claim denial.

There is simply no evidence here that plaintiff was denied full and fair review. Following the initial claim denial, plaintiff was invited to provide all information she believed demonstrated a disability. She did so. The fact that this evidence did not ultimately convince the Plan administrator does not make defendants' decision arbitrary or whimsical. See Seman v. FMC Corp. Ret. Plan for Hourly Employees, 2003 U.S. App. LEXIS 13280 (8th Cir. July 1, 2003); Buttram, 76 F.3d at 900 (finding, in case of failure to review appeal, that defendant had not "come forward with any evidence establishing that the plan trustees failed to use judgment in rendering their decision.").

Plaintiff has not established either a financial conflict[9] or serious irregularities by UNICARE; thus, her challenge to review using the abuse of discretion standard fails.

3. Motion to Strike Second Gedan Review

The Court denies deny Ms. Abram's request to strike Dr. Gedan's second review from the administrative record. Plaintiff argues this review should be stricken, because UNICARE obtained the opinion after the 60 day deadline. A similar argument was rejected in Heffernan v. UNUM Life Insurance Co. of America, 2001 U.S. Dist.

[9] Lacking any evidence supporting allegations of financial conflict, plaintiff no longer pursues this argument.

LEXIS 25032 (S.D. Ohio March 21, 2001). That court considered the purpose of the 60 day regulation: "to allow a plaintiff to file suit after the expiration of the time limit specified by regulation - instead of waiting *ad infinitum* for a final administrative denial that is not forthcoming." Id. at *9. Because the Heffernan administrator had informed the beneficiary that an additional medical review was sought and there was no intent to perpetually delay a decision, the Court found UNUM had not violated the purpose of the 60 day rule. Id. at *10.

Second, Ms. Heffernan was not prejudiced by the additional information because she had waited until the final decision before filing suit. Id. As a result, she was not denied a fair opportunity for review. Finally, that court cited the general policy against post-hoc rationalizations for denial of benefits. Id. at *11; see also Conley, 176 F.3d at 1049. Because none of the documents were created after the decision was made, they were not the type the court ought to discourage.

This Court finds Abram's situation on all fours with Heffernan. Plaintiff was informed that a decision would be delayed to seek review from Dr. Gedan. Having learned of the delay, she did not file suit, but awaited a final decision from the administrator. Finally, the information is not on the record as a post-decision rationale, and defendants actually used the information as part of the material on which it based its decision.

Plaintiff's motion to strike Dr. Gedan's report is denied.

C. Arbitrary and Capricious Review Applied

When applying the abuse of discretion standard, the reviewing Court must consider whether a "reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." See Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002) (citations omitted). In determining the reasonableness of a decision, the Court considers the evidence "actually before the plan administrator." See Smith v. UNUM Life Ins. Co. of Am., 305 F.3d 789, 794 (8th Cir. 2002). While a preponderance of evidence is not required, there must be "more than a scintilla" supporting the administrator's decision. Woo, 144 F.3d at 1162.[10]

The Court, then, looks toward UNICARE's decision and the record evidence. The administrator had before it the initial nurse review, medical history provided by Dr. Brutlag, the two FCEs, and both of Dr. Gedan's reports. After evaluating the competing conclusions presented in these documents, the administrator credited Dr. Gedan's opinion. As Dr. Gedan explained, while Abram demonstrated some lower body weakness, her

[10]Plaintiff advances Reidl v. Gen. Am. Life Ins. Co., 248 F.3d 753, 758-59 (8th Cir. 2001), to suggest "[d]efendants must show as a matter of law that Abram is able to perform every duty of her regular occupation in a 40-hour work week." Pl. Opp'n Mem. at 14. That case, however, was not decided under the abuse of discretion standard. Reidl was subjected to de novo review. That burden is not appropriate here.

job involved sedentary and light duty work that should not be affected. Both Dr. Hovde's FCE and Dr. Gedan's examination of Abram indicated upper body strength and mobility consistent with the ability to perform sedentary computer-based work.

The record evidence showed Ms. Abram's ability to work almost 30 hours during her FCE with Dr. Hovde. Dr. Hovde noted that Abram moved freely around her workspace during the exam, and that while she had a loss of strength over the course of the week, she ably performed the tasks presented to her. In addition, she asked for more complex work projects to fill her time. While he did not feel she could work more than 20 hours each week, Dr. Hovde admitted this was "largely a matter of opinion." He suggested that daytime work breaks and rests might improve Abram's ability to work a full work week. Dr. Gedan's second report explained why this report is consistent with his conclusions, in that an FCE often shows a patient's abilities, but not the limits to those abilities. In this case, plaintiff demonstrated an ability to work 30 hours in a week. There was no evidence, however, that she could not have worked more than 30 hours.

Dr. Gedan stated that, where a person is able to work 6.5 to 7 hours each day, there is no medical reason why they cannot work 8 hours per day. Finally, he explained his reason for discrediting Ms. Abram's subjective complaints of fatigue - observing that it is uncommon for an individual to suffer overwhelming fatigue without

a greater showing of weakness. This evidence is consistent with Dr. Gedan's conclusion that while plaintiff claimed fatigue and pain, he did not believe these complaints could be linked solely to PPS. Dr. Gedan opined that further treatment for depression would help in this regard. Here, Dr. Gedan's suggestions are consistent with Dr. Brutlag's earlier finding that weight loss and exercise and conditioning would alleviate plaintiff's symptoms. Given the facts before him, Dr. Gedan believed Abram was not disabled by PPS.

Plaintiff, however, argues it was unreasonable for UNICARE to adopt this position in that the plan administrator improperly limited its decision to objective medical evidence; that it improperly relied on Dr. Gedan's opinion; and that it did not consider the reports of Dr. Brutlag and Dr. Hovde's FCE.

1. Objective Medical Evidence

Plaintiff strenuously objects to UNICARE's decision, citing its statement that "there is no objective medical evidence that supports the contention that Ms. Abram is totally disabled from performing her job because of a physical condition." This

objection takes multiple forms.[11]

First, Abram claims UNICARE's invocation of this language violates the terms of Cargill's policy because it is inconsistent with the Plan language. The Plan provides that, "the Participant shall furnish to the Plan Administrator such evidence demonstrating that he is Totally Disabled as the Plan Administrator shall require." Stipulated Ex. 1 at ¶ 9.3. Abram cites House v. Paul Revere Life Insurance Co., a case where the Eighth Circuit reversed an insurer's denial of a claim based on the lack of objective medical evidence. See 241 F.3d 1045, 1048 (8th Cir. 2001). In that case, the plan "merely reserved Paul Revere's right to demand that a claim be supported by a medical examination or written proof, both of which House submitted." Id.

Defendants distinguish the policy language in House from the LTD Plan's more discretionary "as the Plan Administrator shall require" language. They argue this added discretion permits a request for objective medical evidence. Defendants note the Eighth

---

[11]Court's have offered different interpretations of the "objective medical evidence" argument, which derives from chronic fatigue syndrome ("CFS") cases. In Mitchell v. Eastman Kodak Co., the first case to interpret the standard, a plan administrator denied benefits, citing the applicant's failure to offer "objective medical evidence" in support of his claim. See 113 F.3d 433, 442 (3rd Cir. 1997). In interpreting the use of this phrase, the Third Circuit Court of Appeals concluded it likely referred to the absence of an etiology for the allegedly disabling symptoms. The Court rejected the "objective medical evidence" requirement as arbitrary and capricious because there is no known etiology for CFS's disabling symptoms. See id. Plaintiff does not seemingly invoke this version of the objective medical evidence argument, as PPS has a known etiology.

Circuit has allowed denial of a claim when the only evidence of a disabling medical condition was subjective. See Coker v. Metro. Life Ins. Co., 281 F.3d 793, 799 (8th Cir. 2002). In Coker, the request for objective medical evidence was found to be reasonable because the claimant was indisputably diabetic, but not necessarily disabled. See id.

The Court finds Martin v. Continental Casualty Co., 96 F. Supp. 2d 983 (N.D. Cal. 2000) persuasive. In that case, a claimant was denied disability benefits for his PPS based on the lack of objective medical evidence. Id. at 989. That court considered whether the administrator's decision violated the plan's terms and held "the terms used were reasonable, and in fact necessary to give context to the plain language of the plan." Id. at 991-92. The court found an objective medical evidence standard was not arbitrary, because it allowed the plan administrator to ascertain whether the claimant had introduced evidence showing an inability to perform sedentary work.

Here, the Plan administrator sought objective medical evidence to assess Ms. Abram's capacity to perform her light duty, sedentary job. Importantly, the record does not indicate that UNICARE considered only objective medical evidence, rather that it sought some demonstration of total disability. While plaintiff argues that she did, in fact, present objective medical evidence of disability -- listing the 1986 EMG data, identification of her

Trendelenburg gait, and a variety of examples of weakness in her lower extremities -- she misunderstands defendant's rejection of her claim. See Pl. Summ. J. Mem. at 28 n. 14.

Her misunderstanding results from the fact that while her symptoms may be objective evidence of her illness, they are not necessarily evidence of total disability. The administrative committee was not concerned with whether plaintiff had an illness, but whether she could work. UNICARE faced widely varying opinions regarding Ms. Abram's ability to work, ranging from Brutlag's assessment that she could not work at all, to Hovde's 20 hour recommendation, to Gedan's 40 hour prediction. Given this divergence of opinion, including Dr. Gedan's expressed concerns regarding the reliability of plaintiff's complaints of fatigue and pain,[12] it was reasonable for defendants to seek objective medical evidence regarding her inability to work.

Alternatively, Ms. Abram argues UNICARE's reference to objective medical evidence with respect to PPS is arbitrary and capricious, because PPS symptoms are not manifest objectively. See Mitchell, 113 F.3d at 442. The Eighth Circuit has adopted plaintiff's argument in chronic fatigue syndrome cases. See Wilkens v. Hartford Life & Accident Ins. Co., 299 F.3d 945, 947

---

[12]Plaintiff also seeks to support her position by suggesting the Court adopt the Polaski credibility standard from social security disability cases. See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998). The Eighth Circuit has explicitly declined to extend this analytic to ERISA cases. See Conley, 176 F.3d at 1049.

(8th Cir. 2002) (recognizing Mitchell precedent as it relate to CFS).

Ms. Abram's concern is misplaced; it is inappropriate to equate chronic fatigue syndrome with PPS. Here, the stipulated record evidence describes PPS, listing both "subjective" and "objective" symptoms including fatigue, slowly progressive muscle weakness, muscle and joint pain, respiratory insufficiency from progressive muscle weakness, speech disturbances, difficulty swallowing, muscle cramps, cold intolerance, muscular twitches, new or progressive joint deformities and muscular atrophy. See Stipulated Ex. 4; Winters, 232 F. Supp. 2d at 929 (reversing denial of benefits in PPS cases based on indisputable objective medical evidence documenting worsening condition).

The Martin opinion addresses this question as well. There, the court evaluated both subjective and objective medical evidence and concluded it was not the nature of the complaint or type of evidence, but the thoroughness of the record which was of consequence. See 96 F. Supp. 2d at 994. While the treating physician felt "the preferable course would be to cease office work entirely," the evidence did not show the claimant was unable to meet the demands of a sedentary position. Id.

This Court faces a similar record. Though the record shows some objective evidence of PPS, the Plan administrator faced an inconclusive record regarding plaintiff's ability to work a 40 hour

week. In this context, the request for objective medical evidence was legitimately connected to the disability determination, and there is no showing it was designed as an artificial hurdle to benefits. UNICARE's request for objective medical evidence was not arbitrary and capricious.

Plaintiff next claims defendants wrongfully required her to prove her condition was worsening, citing the following language from the March 12, 2001, denial letter: "it is clear that you have had these symptoms for quite some time and have continued to work in spite of your lower extremity weakness." Stipulated Ex. 17. Defendants reply that this statement arose from a misunderstanding about the nature of Abram's job requirements at the time of the claim. They admittedly thought she was a part-time employee, and wrongly considered her initial claim under an incorrect framework. To the contrary, the August 7, 2000, letter contains no similar language. It is clear from the record that UNICARE learned of its error and promptly acted to ensure it properly understood the scope of Ms. Abram's position before deciding her claim on appeal. There is no evidence this mistake affected the final denial.

2. IME Evidence

Plaintiff asks the Court to reject any opinion issued by Dr. Gedan.[13] The Court has already ruled on these issues; it has been given no new evidence showing why that ruling should be

[13] See Abram v. Cargill, 2003 U.S. Dist. LEXIS 7027 (D. Minn. Feb. 10, 2003) (rejecting impeachment of Dr. Gedan's conclusions).

reconsidered. Ms. Abram argued Dr. Gedan was not qualified to evaluate PPS because he was not an expert in the field. Her claim that Dr. Gedan was not qualified to evaluate PPS -- a neurological disease -- remains pure speculation.

Plaintiff claims Dr. Gedan was predisposed to deny the claim because of the conclusions made by the UNICARE nurse. This is entirely without support. The Supreme Court, in deciding that a treating physician's opinion is afforded no greater weight than an IME conclusion, recognized that in a close case, an IME may be more likely to find "not disabled," and a treating physician more likely to find "disabled." See Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965, 1971 (2003). Nonetheless, any claim the denial was a foregone conclusion is belied by the record. See Buttram, 76 F.3d at 901.

UNICARE sent Abram to an IME, and after receiving the Hovde FCE, requested a second FCE Dr. Brutlag. The record indicates the committee seriously considered the conflicting opinions and sought to resolve the conflict. Faced with a simple conflict in assessments, the Court defers - as it must - to the administrative determination of credibility.

Alternatively, plaintiff argues Dr. Gedan's opinion was not supported by substantial evidence and urges the Court to consider whether the Plan administrator reviewed his report with sufficient care. This argument invites the Court to engage in a de novo

review. Ms. Abram asks the Court to reconsider unfavorable record evidence. See Jett, 890 F.2d at 1139. The Court cannot oblige. Were the Court to follow plaintiff's lead and re-examine Dr. Gedan's reports while blindly accepting Dr. Brutlag's conclusions, it would undermine the entire purpose of the ERISA regime. See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (encouraging "expeditious judicial review of ERISA benefit decisions . . . to keep district courts from becoming substitute plan administrators"). Ms. Abram's request would unnecessarily entangle the Court in the benefits process. Here, substituting the Court's judgment for the committee's would circumvent proper abuse of discretion review. Plaintiff's request is therefore denied.

3. Weight of Medical Evidence

Finally, Abram argues UNICARE did not afford preferential weight to Dr. Brutlag's opinion and or explain its reasons for disagreeing with Dr. Brutlag in writing. The United States Supreme Court recently rejected both of these arguments.

An ERISA administrator need not defer to the treating physician judgment. See Black & Decker Disability Plan, 123 S.Ct. as 1970; House v. Paul Revere Life Ins. Co., 241 F.3d 1045, 1048 (8th Cir. 2001) (holding a plan may discount a treating physician completely "in favor of a contrary opinion produced by the independent examiner"). There is no heightened burden of

explanation when a plan administrator rejects the treating physician's opinion. Id. When a conflict in medical opinions exists, "the plan administrator does not abuse his discretion in finding that the employee is not disabled." Smith, 305 F.3d at 795 (citing Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996)).

The opinion of Dr. Brutlag does "not automatically control, since the record must be evaluated as a whole." Delta Family-Care Disability & Survivorship Plan v. Marshall, 258 F.3d 834, 842 (8th Cir. 2001) (citations omitted). As set forth above, the Court finds UNICARE considered the record in its entirety and took steps to resolve any conflict between the physicians' opinions. Ultimately, however, the plan administrator elected to credit the IME's conclusion over those offered by Dr. Brutlag. This decision, made after weighing conflicting opinions and assessments, was not an abuse of discretion.

The Court finds that the decision denying Abram long-term disability benefits was not unreasonable or overwhelmed by contrary evidence. Smith, 305 F.3d at 795. Because the plan administrator did not abuse its discretion in denying benefits, the decision is affirmed.

D. Tort Claims

Finally, defendants move for summary judgment on the breach of fiduciary duty claim because it is subsumed by the ERISA claim. See Varity Corp. v. Howe, 516 U.S. 489 (1996). Plaintiff does not

oppose dismissal of these claims. Defendants' motion is granted.

## III. Conclusion

Based upon the record before the Court, defendants' denial of claimant Abram's benefits was not an abuse of discretion. Accordingly,

1. Plaintiff's motion to strike the affidavit of Dr. Joel Gedan [Docket No. 59] is denied.

2. Plaintiff's motion for partial summary judgment [Docket No. 59] is denied.

3. Defendants' motion for summary judgment [Docket No. 64] is granted.

IT IS SO ORDERED.

Dated: September 25th, 2003

JAMES M. ROSENBAUM
United States Chief District Judge