CV#01-1656 JMR/FLN

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-3740

| | | |
|---|---|---|
| Ellen Abram, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal From the United States |
| Cargill, Incorporated; Cargill Incorporated and Associated Companies Long Term Disability Plan; Unicare ERISA Claim Appeal Review Committee; Unicare Life and Health Insurance Company, | * | District Court for the District of Minnesota. |
| | * | |
| Appellees. | * | |

Submitted: November 18, 2004
Filed: January 24, 2005

Before WOLLMAN and HEANEY, Circuit Judges, and HOLMES,[1] District Judge.

HEANEY, Circuit Judge.

This appeal arises under the Employment Retirement Income Security Act (ERISA). Ellen Abram applied for benefits under Cargill's long-term disability plan.

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by designation.

SCANNED
APR 04 2005
U.S. DISTRICT COURT MPLS

UNICARE, the plan administrator (the Plan), denied Abram's claim initially and on appeal. Abram then sought review of the Plan's decision in district court, and the district court granted summary judgment to the Plan. Abram appeals, claiming that the court should have (1) reviewed the Plan's decision de novo; (2) excluded the report of an independent medical examiner, or included Abram's response to that report; or (3) found that the Plan's decision was an abuse of discretion. We conclude that Abram should have been permitted to respond to the independent medical examiner's report, and that the Plan must determine whether Abram's obesity, alone or in combination with her Post Polio Syndrome (PPS), is totally disabling. We reverse.

## BACKGROUND

In 1985, Abram began experiencing fatigue and pain. She was treated by Dr. Anne K. Brautlag, an expert in rehabilitative medicine, who determined that Abram had developed PPS, a progressive illness found in polio survivors, which commonly causes fatigue, weakness, and pain.[2] After her diagnosis, Abram continued to work for Cargill as a professional manager, supervising employees involved in billing and accounting. Her job was mainly sedentary and computer related. Cargill altered Abram's management responsibilities so that she would not need to walk around the Cargill campus. Despite this modification, in 1998, Abram started using short-term

---

[2]PPS is a progressive syndrome affecting up to forty percent of the polio survivors in the United States and may strike thirty to forty years after the initial infection. (Appellant's App. at 82.) Common symptoms include fatigue, new weakness, and pain. PPS patients may also suffer new muscle atrophy, respiratory insufficiency, speech disturbances, swallowing difficulty, muscle cramps, cold intolerance, muscular twitches, and new or progressive joint deformities. (Id.) As an infant, Abram suffered from infantile paralysis polio. While she recovered from the illness, her right leg remains shorter than her left, and the right foot is smaller than the left.

disability and vacation time to limit her hours. Abram's symptoms worsened and she applied for long-term disability benefits on July 26, 2000.

Cargill's long-term disability plan provides a monthly benefit to participants who are totally disabled. Under the Plan, "Total Disability" is "the complete inability of a Participant to perform any and every duty of his regular occupation with the Company." (Appellant's App. at 31.) In her application, Abram stated that she was unable to fulfill her job duties at Cargill due to her increasing fatigue, weakness, and pain.

Abram submitted medical records, including the examination notes of Dr. Brautlag. (Id. at 92-103.) The notes detail Abram's progressive loss of strength. Dr. Brautlag also observed that Abram was overweight and deconditioned, and that her condition might improve with weight loss and exercise. (Id. at 98-99.) She concluded that Abram was disabled. An evaluating nurse for the Plan reviewed Abram's medical records and found them inconclusive. Abram's records from treatment of a fractured ankle did not reflect the lower extremity weakness, or paresis, found by Dr. Brautlag. The evaluation concluded that there was insufficient objective medical evidence to support Abram's claim of permanent and total disability "from a 20 hour workweek, sedentary job." (Id. at 121-22.)

Based on this evaluation, the Plan sent Abram to Dr. Gedan, an independent medical examiner. The Plan instructed Dr. Gedan to limit his opinion to Abram's PPS. (Id. at 125.) On physical exam, Dr. Gedan observed that Abram complained of pain in both legs and that Abram's "right leg was less well developed than the left," with some "atrophy on the right side." (Id. at 129-30.) Dr. Gedan found that Abram's motor strength was normal on most measures. Dr. Gedan concluded that Abram was able to perform sedentary or light duty work that involved sitting at a desk or computer terminal.

Dr. Gedan did not address Abram's primary complaint of pain and fatigue, but recommended a functional capacity evaluation which could "give a much better idea of Ms. Abram's functional capabilities." He did not dispute the diagnosis of PPS, but concluded that Abram's PPS was not the primary cause of her fatigue because she did not show the "marked weakness which is usually the most significant part" of PPS. (Id. at 132.) The report concluded that obesity and depression were causing Abram's fatigue and pain. (Id.)

After reviewing this report, Dr. Brautlag disputed the conclusion that Abram was severely depressed. She reiterated that Abram's progressive weakness, pain, and fatigue was consistent with PPS and that she was convinced, based on her treatment of Abram over a period of years, that she was not capable of sedentary work. Dr. Brautlag did not indicate whether Abram's disability was a result of PPS, obesity, or a combination of the two. The Plan did not request any clarification.

Without taking any further submissions, the Plan denied Abram's claim, stating that Abram had not presented objective medical evidence of disability. (Id. at 90-91.) It noted that her PPS symptoms had been present "for quite some time," and she had managed to work in spite of her lower extremity weakness. (Id.) The denial letter concluded that she was able to perform a sedentary job like the one she held at Cargill. Abram's obesity was not addressed in the letter.

Abram appealed on May 9, 2001. She submitted a functional capacity evaluation (FCE) from Dr. John Hovde, designed to test Abram's tolerance for sedentary work. (Id. at 170-75.) The FCE was designed to simulate a full work week and accordingly lasted several days. Dr. Hovde reported that Abram actively performed sedentary work throughout the exam, but that her strength and physical function deteriorated over the course of the evaluation. Abram reported that her fatigue grew throughout the FCE, and that she had difficulty concentrating and made more mistakes as the FCE progressed. Dr. Hovde concluded that Abram could not

consistently work more than four hours per day or twenty hours in a given week. Abram also submitted a letter from Cargill clarifying that her job was a forty-hour per week position, and not a twenty-hour position as the Plan had assumed in its denial letter.

The Plan appeals committee reviewed this material, and concluded that Abram could not work in a full-time position. The committee, however, did not reach a final decision, and on July 8, 2001, the appeals deadline lapsed without any decision or notice of extension. The committee met again on July 23, 2001 and reviewed the reports submitted by Dr. Hovde and Dr. Brautlag. They then sent the new material to Dr. Gedan, the independent medical examiner, for review.

On July 30, 2001, Dr. Gedan sent an opinion letter to the Plan based on the FCE from Dr. Hovde. He observed that the FCE did not establish the upper limit of Abram's tolerance for sedentary work, because she completed the 32-hour test. He concluded: "If someone could perform the job 6 to [7.5] hours per day, there is no reasonable medical explanation as to why they could not perform their job 8 hours per day." (Id. at 192.) On the basis of Dr. Gedan's report, the Plan denied Abram's claim August 6, 2001, almost a month after its decision was due. (Id. at 194.) The Plan provided a copy of Dr. Gedan's report to Abram with the denial letter.

Abram challenged this decision before the district court. The court granted summary judgment to the defendants, affirming the Plan decision employing an abuse of discretion standard. On appeal, Abram argues that the district court should have applied a de novo standard of review, that the court improperly admitted Dr. Gedan's second report and excluded Abram's response to Dr. Gedan's report, and that the court erred in concluding that denial of Abram's claim was not an abuse of discretion. We conclude that the Plan should have permitted Abram to respond to Dr. Gedan's second report and did not consider Abram's obesity in making its decision, and thus remand for further consideration by the Plan.

## ANALYSIS

An employee benefit plan governed by ERISA must

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Full and fair review includes the right to review all documents, records, and other information relevant to the claimant's claim for benefits, and the right to an appeal that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2000). This circuit has held that these procedures allow a claimant to "adequately prepare [her]self for any further administrative review, as well as an appeal to the federal courts. The statute and the regulations were intended to help claimants process their claims efficiently and fairly." Richardson v. Central States, Southeast & Southwest Areas Pension Fund, 645 F.2d 660, 665 (8th Cir. 1981). "[T]he persistent core requirements" of full and fair review include "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." Grossmuller v. Int'l Union, UAW, 715 F.2d 853, 858 n.5 (3rd Cir. 1983). ERISA and its accompanying regulations essentially call for a "meaningful dialogue between the plan administrators and their beneficiaries." Booten v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997). Plan procedures cannot be "full and fair" without providing for this communication. See Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998) (holding that ERISA claimants are entitled to

"timely and specific" explanation of benefit denials, and may not be "sandbagged" by post-hoc justifications of plan decisions).

The process used by the Plan was not consistent with a full and fair review. Abram was not provided access to the second report by Dr. Gedan that served as the basis for the Plan's denial of benefits until after the Plan's decision. Without knowing what "inconsistencies" the Plan was attempting to resolve or having access to the report the Plan relied on, Abram could not meaningfully participate in the appeals process. See Richardson, 645 F.2d at 665. Dr. Gedan's report was solicited after the deadline for an appeals decision had passed, and was sent to Abram only after the Plan issued its final denial decision. This type of "gamesmanship" is inconsistent with full and fair review. Wilczynski v. Lumberman's Mut. Cas. Co., 93 F.3d 397, 403 (7th Cir. 1996); Richardson, 645 F.2d at 665 (ERISA and its regulations were not intended to be used "as a smoke screen to shield" the plan from legitimate claims). There can hardly be a meaningful dialogue between the claimant and the Plan administrators if evidence is revealed only after a final decision. A claimant is caught off guard when new information used by the appeals committee emerges only with the final denial. See Marolt, 146 F.3d at 620. Abram should have been permitted to review and respond to the report by Dr. Gedan.

Moreover, we find an alternative reason to remand. The record shows three conditions that may be contributing to Abram's disability: PPS, depression, and obesity. Dr. Gedan, the independent medical examiner, suggested that obesity and depression caused, or contributed to, Abram's fatigue. Dr. Brautlag disputed the depression diagnosis, but agreed that Abram was obese, and that her obesity could be contributing to her fatigue. Despite this evidence of a potentially disabling condition, Abram's morbid obesity, see Brown v. Sullivan, 902 F.2d 1292, 1296 (8th Cir. 1990) (remanding for consideration of whether social security claimant's obesity was disabling in combination with other conditions); Barrett v. Barnhart, 355 F.3d 1065, 1068 (7th Cir. 2004) (remanding where ALJ discounted the impact of claimant's

obesity on his ability to work), the Plan focused only on Abram's PPS, asking whether it was the cause of her fatigue.

The Plan specifically instructed Dr. Gedan to address only PPS in his initial evaluation. (Appellant's App. at 125.) His second opinion letter, based on the report by Dr. Hovde, also does not address the impact of obesity on Abram's fatigue, stating only that it may be a factor. Dr. Gedan's letter does not dispute Abram's claim of fatigue, diagnosis of PPS, or Dr. Hovde's finding of progressive weakness through the exam, but he concludes, without further explanation, that Abram is able to work full time. The Plan is not free to accept this report without considering whether its conclusions follow logically from the underlying medical evidence.[3]

A reviewing court must remand a case when the court or agency fails to make adequate findings or explain the rationale for its decision. Mayo v. Schiltgen, 921 F.2d 177, 179 (8th Cir. 1990). This remedy is appropriate in ERISA cases. Harden v. Am. Express Fin. Corp., 384 F.3d 498, 500 (8th Cir. 2004) (per curiam) (remanding to the plan administrator where the plan failed to obtain and consider social security records, which the plan implied it would consider); see also Gaither v. Aetna Life Ins. Co., 388 F.3d 759, 773-76 (10th Cir. 2004) (remanding where the plan failed to obtain or consider information about the claimant's termination for use of narcotic painkillers); (Gallo v. Amoco Corp., 102 F.3d 918, 923 (7th Cir. 1996) (noting that remand is appropriate when an ERISA plan does not make adequate findings or adequately explain its reasoning).

---

[3]While fatigue is difficult to assess, disability plan administrators may not require objective medical evidence of the cause if there is consistent evidence of disability symptoms, and no finding that the claimant is not credible in her complaints. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 442-43 (3rd Cir. 1997); Wilkins v. Hartford Life & Acc. Ins. Co., 299 F.3d 945, 947 n.1 (8th Cir. 2002). The Plan will have the opportunity on remand to consider whether Dr. Gedan's second report provides a sufficient basis for denying Abram's claim.

Whether reviewing for abuse of discretion or de novo, we would consider both Abram's obesity and her PPS. See Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1177, 1179-80 (8th Cir. 2001) (considering evidence that the claimant might have a disabling psychological condition, where claim was based on breast cancer and arthritis). The evidence in the record does not show that PPS is the sole cause of Abram's pain or fatigue, but the Plan has not addressed whether Abram's obesity is disabling in combination with her PPS. The Plan relied on Dr. Gedan's reports, which are limited to the effect of Abram's PPS, and address fatigue and pain only when reviewing the contrary findings of Dr. Hovde.

Dr. Gedan specifically identified another condition and indicated that it may be the cause of Abram's reported symptoms. Where a condition is specifically identified by the medical examiner on whom the Plan relies, it must be addressed in the Plan's decision. The Plan is not free to ignore evidence of this second, potentially disabling condition.

We therefore reverse and remand. The district court is directed to remand the case to UNICARE with instructions to reopen the administrative record, permit Abram to respond to Dr. Gedan's second report, and determine whether Abram's obesity, alone, or in combination with her PPS, is totally disabling. See Harden, 384 F.3d at 500.

______________________________

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans